UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:01CV00269

| | |
|---|---|
| SCOT WALLACE DAWSON and<br>VICTORIA DAWSON,<br><br>        Plaintiffs,<br>v.<br><br>SAM PAGE (In his official capacity as<br>Sheriff of Rockingham County), ROGER<br>HAMPTON HAIR (Individually and in his<br>Official capacity as a Major with the<br>Rockingham County Sheriff's Department),<br>J.V. THOMAS (Individually and in his<br>official capacity as a Captain with the<br>Rockingham County Sheriff's Department),<br>A.B. FORRER (Individually and in his<br>official capacity as a Deputy with the<br>Rockingham County Sheriff's Department),<br>RANDOLPH EDWARD HOWELL<br>(Individually and in his official capacity<br>as a Deputy with the Rockingham County<br>Sheriff's Department), AND FIDELITY<br>AND DEPOSIT COMPANY OF<br>MARYLAND,<br><br>        Defendants. | **DEFENDANTS' BRIEF IN SUPPORT<br>OF MOTION IN LIMINE<br>TO EXCLUDE TESTIMONY<br>OF ALLEGED PRIOR ACTS OF<br>DEFENDANT ROGER HAIR** |

---

Defendants respectfully submit this Brief in Support of their Motion *in Limine* to Exclude Testimony of Alleged Prior Acts of defendant Roger Hair.

**MATTER BEFORE THE COURT**

The matter before the Court is Defendants' Motion *in Limine* to Exclude Testimony of Alleged Prior Acts of defendant Roger Hair (filed and served contemporaneously herewith). This case is set for trial on February 18, 2003.

## ARGUMENT

Defendants anticipate that Plaintiffs might attempt to elicit testimony regarding prior purported misconduct of defendant Roger Hair, despite the fact that Magistrate Judge Eliason's September 13, 2002, Order and Recommendation, which was subsequently approved *in toto* by Judge Bullock on October 17, 2002, ruled that the allegations that defendant Hair once struck a handcuffed prisoner, wrecked two patrol cars during high speed chases, was forced to resign by the former Sheriff of Rockingham County, and was barred from rehire with the Rockingham County Sheriff's Office by the former Sheriff were "extremely weak," "unconvincing," "of no moment," and "there is no strong link between that past and a propensity to use excessive force in effecting arrests." (Eliason Order and Recommendation pgs., 33-35). Summary judgment was granted in favor of the defendants with respect to Plaintiffs' claim of Sheriff Page's purported negligent hiring of Mr. Hair. Furthermore, all of the alleged prior acts set forth in this brief were remote in time and are not similar to the purported acts of misconduct alleged by Plaintiff's in the present case. Thus, these alleged prior acts should be held inadmissible under Federal Rules of Evidence 401, 402, 403, and 404.

## ALLEGATIONS THAT MR. HAIR SLAPPED A HANDCUFFED INMATE AFTER THE INMATE SPIT ON HIM IS IRRELEVANT AND INADMISSIBLE

Defendants seek an Order from the Court prohibiting plaintiff's counsel from referring to or introducing any evidence relating to an alleged incident involving Hair striking a handcuffed prisoner, which purportedly occurred in the early 1980's.

The Fourth Circuit has established a four-prong test of admissibility for prior-act evidence under Rule 404(b): "(1) the prior-act evidence must be relevant to an issue other than character; (2) it must be necessary to prove an element of the crime charged; (3) it must be

2

reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be 'substantially outweighed' by its prejudicial nature." *United States of America v. Roland Demingo Queen,* 132 F.3d 991, 995 (4th Cir. 1997). This evidence fails the four-prong test.

First, this evidence is irrelevant because it is not similar to the act at issue in the case at hand and is remote in time. The Fourth Circuit has held that, "[u]nless the acts are similar to the one at issue, they show only bad character – which goes to the heart of what Rule 404 prohibits." *Simmons v. R.J. Scott,* 1995 U.S. App. Lexis 5566, *8 (4th Cir. 1995) (copy attached). In *Simmons*, the plaintiff sued a police officer for allegedly using excessive force during his arrest. The plaintiff challenged the district court's determination that prior complaints against the defendant officer for the use of excessive force could not be introduced into evidence under Federal Rule of Evidence 404(b). *See id.* at *2. The plaintiff asserted that, because the officer claimed that the gun accidentally fired in the midst of a struggle, these incidents of prior abuse would serve to rebut the defendant's contention by showing a "lack of accident" and "intent," as permitted under Rule 404(b). *Id.* The Fourth Circuit upheld the district court's finding that the prior acts were not similar enough to be probative. In the case at hand, Sheriff Page testified that Hair smacked the handcuffed prisoner in the face after the prisoner spit on Hair. (Page depo. pg. 51, ln. 7-22). As Magistrate Judge Eliason and Judge Bullock held, "the incident was both limited and a reflexive response to being assaulted by the prisoner. That is far different from the allegations in this case where plaintiffs claim that Hair first participated in a lengthy assault of a handcuffed suspect who had offered no resistance after being stopped, and then assaulted an older woman who was simply confused by his orders." (Eliason Order and Recommendation, pg. 34). Thus, given the factual dissimilarities between the striking incident and the present case, under 404(b), this evidence should be excluded.

3

Furthermore, the Fourth Circuit in *Simmons* held that "remoteness of time severely impact[s] on the probativeness and reliability of the evidence." *Id.* at *7. In *Simmons,* each act took place at least five years before the incident in question and, thus, the court found that their remoteness in time weighed against their probative nature. *Id.* In the case at hand, the incident occurred in the early 1980's, around fifteen to twenty years before Hair allegedly assaulted plaintiffs. Therefore, due to its remoteness in time, the prior act is irrelevant and inadmissible.

"In sum, the incident occurred many years ago under circumstances very different from the present case, [] and Hair was not alleged to have repeated the behavior prior to arresting plaintiffs." (Eliason Order and Recommendation, pg. 34). Accordingly, the evidence is inadmissible.

Likewise, because the evidence lacks any relevance to the case at hand, it is clearly not necessary to prove an element of the claim asserted as required by the second prong of the Fourth Circuit test. Moreover, even assuming arguendo, that the plaintiff could meet the first three prongs of the 404(b) test, the evidence fails the 403 balancing test because any probative value would be substantially outweighed by its prejudicial nature, would unfairly prejudice Mr. Hair, mislead the jury, and cause undue delay. Hence, as evidence fails to meet the Fourth Circuit's four-prong test, any evidence regarding the slapping incident is inadmissible.

## TWO CAR ACCIDENTS

The evidence that Mr. Hair was involved in two car accidents in the 1980's is completely irrelevant and should not be admissible. As Magistrate Judge Eliason and Judge Bullock noted, "Hair is accused by plaintiffs of brutality, not reckless driving" and, "plaintiffs have not shown that either of these [accidents] resulted from any over-excitedness or loss of temper on Hair's

4

part." (Eliason Order and Recommendation, pg. 34). Thus, the evidence of these car accidents should not be admissible since they are clearly irrelevant to the matter at hand.

Furthermore, this evidence is inadmissible character evidence, which is excluded under Rule 404(b). This evidence is irrelevant because it is not similar to the claim of excessive force, is remote in time, and is not necessary to prove an element of excessive force. Thus, this evidence should be excluded.

Additionally, this evidence fails the 403 balancing test because any probative value would be substantially outweighed by its prejudice.

## HAIR WAS ASKED TO RESIGN BY THE FORMER SHERIFF AND THE SHERIFF WOULD NOT CONSIDER HAIR FOR REHIRE

Defendants request that the Court prohibit plaintiff's counsel from referring to or introducing any evidence that the former Sheriff Vernon purportedly asked Mr. Hair to resign and would not consider Mr. Hair for rehire. As Magistrate Judge Eliason and Judge Bullock noted, "[t]he fact that the former Sheriff informed a state agency that he would not consider Hair for rehire is also of no moment. On a standard form, the Sheriff simply checked a box saying that he would not rehire Hair. It could have been for personal or political reasons. He did not explain this decision and failed to check a box stating that he would not recommend that another law enforcement agency hire Hair." (Eliason Order and Recommendation, pg. 35).

This evidence is inadmissible character evidence under Rule 404(b). First, this evidence is irrelevant because it is not similar to the act at issue in the case at hand. There are no allegations nor evidence that Hair was asked to resign due to any action regarding excessive force. As noted earlier, "[u]nless the acts are similar to the one at issue, they show only bad

5

character – which goes to the heart of what Rule 404 prohibits." *Simmons v. R.J. Scott*, 1995 U.S. App. Lexis 5566, *8 (4th Cir. 1995). Thus, this evidence should be excluded.

Furthermore, Mr. Hair was allegedly asked to resign in the 1980's. Thus, as the Fourth Circuit has held, "remoteness in time severely impact[s] on the probativeness and reliability of the evidence." *Simmons*, 1995 U.S. App. Lexis 5566, at *7. Therefore, due to its remoteness in time, the prior act is irrelevant and inadmissible character evidence.

Additionally, this evidence fails the 403 balancing test because any probative value would be substantially outweighed by its prejudice. Mr. Hair would be unfairly prejudiced if there is testimony that he was asked to resign and that the former Rockingham County Sheriff checked a box that he would not rehire Hair. There is no evidence as to why the former Sheriff purportedly requested Mr. Hair to resign and any mention of this could mislead a jury to think that Mr. Hair did something wrong.

## CLONING THE COUNTY MANAGER'S PAGER

Defendants request that the Court prohibit counsel from referring to or introducing any evidence that Major Hair purportedly cloned the county manager's pager without permission. This evidence clearly does not meet the Fourth Circuit's four-prong test of admissibility for prior-act evidence under 404(b). This evidence is irrelevant because it is not similar to the use of excessive force and, thus, is clearly bad character evidence, which is specifically prohibited by Rule 404.

Furthermore, the evidence fails the 403 balancing test because any probative value would be substantially outweighed by its prejudice. Mr. Hair would be unfairly prejudiced if the plaintiffs' counsel elicited testimony regarding this alleged incident. The issue of whether or not

6

Mr. Hair actually cloned the county manager's pager would cause undue delay. Accordingly, this evidence should be excluded.

**SEXUAL AFFAIRS**

Defendants request that the Court prohibit counsel from referring to or introducing any evidence that Major Hair allegedly made sexual advances or had an affair with any employees of the Rockingham County Sheriff's Office, including Kathy Knight. This evidence is clearly irrelevant since it is bad character evidence, which is specifically excluded under Rule 404(b). There is no relevancy between whether or not Mr. Hair had sex with Kathy Knight in the early 1990's and the alleged use of excessive force in the case at hand. Since this evidence lacks any relevance to the case at hand, is remote in time, and is definitely not necessary to prove an element of the asserted claim, as required by the Fourth Circuit, this evidence should be excluded.

Additionally, evidence regarding sexual affairs fails the 403 balancing test because any probative value would be substantially outweighed by its prejudice. Mr. Hair has been married for over twenty years to his wife. Evidence of alleged affairs would unfairly prejudice Mr. Hair. Moreover, defending the allegations of sexual affairs would cause undue delay in the trial. Thus, all evidence regarding sexual advances or affairs should be excluded.

**ANY OTHER ACTS THAT ARE NOT RELEVANT TO WHETHER MR. HAIR USED EXCESSIVE FORCE**

Defendants further request that the Court prohibit plaintiffs' counsel from referring to or introducing any other evidence regarding prior acts or conduct on the part of Mr. Hair which is otherwise irrelevant to the issue of whether or not Mr. Hair used excessive force. Such evidence

7

is not relevant to the issue of excessive force and is otherwise not necessary to prove any element of the plaintiffs' case and, thus, should be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court Order that evidence regarding alleged prior acts of Defendant Roger Hair be excluded.

8

Respectfully submitted, this the 6 day of February, 2003.

*Allan R. Gitter*
ALLAN R. GITTER
N.C. State Bar No. 1652

*Rachel E. Daly*
RACHEL E. DALY
N.C. State Bar No. 27777

Attorneys for Defendants Sam Page, Roger Hampton Hair, J.V. Thomas, A.B. Farrer, Randolph Edward Howell, Rockingham County, and Fidelity and Deposit Company of Maryland

OF COUNSEL:

WOMBLE CARLYLE SANDRIDGE & RICE
*a Professional Limited Liability Company*
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 721-3600

*William L. Hill*
WILLIAM L. HILL
N.C. State Bar No. 21095

Attorney for Defendant Randolph Edward Howell

OF COUNSEL:

Moss & Mason
Post Office Box 9597
Greensboro, NC 27249
Telephone: (336) 370-1282

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he/she is an attorney at law licensed to practice in the State of North Carolina, is attorney for DEFENDANTS (Sam Page, Roger Hampton Hair, J.V. Thomas, A.B. Farrar, Randolph Edward Howell, Anthony Welch, Rockingham County, and Fidelity and Deposit Company of Maryland) and is a person of such age and discretion as to be competent to serve process.

That on  Feb. 6 , 2003, he/she served a copy of the attached **DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ALLEGED PRIOR ACTS OF DEFENDANT ROGER HAIR** by placing said copy in a postpaid envelope and addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and its contents in the United States Mail at Winston-Salem, North Carolina and also by faxing a copy.

ADDRESSES:

    Stewart W. Fisher
    Robert B. Glenn
    Glenn, Mills & Fisher, P.A.
    Post Office Drawer 3865
    Durham, NC 27702

    William L. Hill
    Moss & Mason
    Post Office Box 9597
    Greensboro, NC 27429

    Jack W. Floyd
    Floyd & Jacobs
    Post Office Box 1260
    Greensboro, NC 27402-1260

    /s/ Rachel E. Daly
    Womble Carlyle Sandridge & Rice, PLLC
    One West Fourth Street
    Winston-Salem, NC 27101
    Telephone: (336) 721-3600

10

WINSTON 1201866v1

*1995 U.S. App. LEXIS 5566, ***

CARL E. SIMMONS, Plaintiff-Appellant, v. R. J. SCOTT; THE CITY OF ROANOKE, Defendants-Appellees.

No. 94-1035

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

1995 U.S. App. LEXIS 5566

January 30, 1995, Argued
March 20, 1995, Decided

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 50 F.3d 7, 1995 U.S. App. LEXIS 11430.

**PRIOR HISTORY:** Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, Chief District Judge. (CA-92-851-R).

**DISPOSITION:** AFFIRMED

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff arrestee filed a 42 U.S.C.S. § 1983 action against defendants, officer and city, alleging excessive force by the officer and failure to train by the city. The arrestee also asserted state law tort claims against the officer. The United States District Court for the Western District of Virginia found in favor of the officer and the city. The arrestee appealed.

**OVERVIEW:** The arrestee was severely injured by a bullet from the officer's pistol during a traffic stop. In response to the arrestee's challenges, the appellate court held that: (1) the district court did not abuse its discretion in refusing to admit previous complaints of excessive force by the officer pursuant to Fed. R. Evid. 404(b) because the acts that were similar enough to be probative of the officer's intent were too remote in time; (2) defense counsel's mention of the arrestee's inadmissible prior arrest did not warrant a new trial because the comment was brief and the jury was quickly instructed to disregard; (3) the district court did not abuse its discretion in denying the arrestee's motion for a new trial based on statements impermissibly alluding to his prior drug convictions because the statements reiterated previously admitted testimony and the arrestee was not prejudiced; (4) the district court properly refused to instruct the jury on gross negligence because there was no evidence to support it; and (5) the district court did not abuse its discretion in denying the arrestee's motion for a new trial based on newly discovered evidence that not likely to produce a new outcome.

**OUTCOME:** The court affirmed the district court's judgment in favor of the officer and the city.

### LexisNexis(TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

📄 Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
📄 Evidence > Relevance > Prior Acts, Crimes & Wrongs
**HN1** The threshold requirements for admitting evidence under Fed. R. Evid. 404(b) are: (a) whether the proffered evidence is relevant to an issue other than the defendant's character, and (b) whether the probative value is substantially outweighed by its prejudicial effect. A district decision not to admit evidence under this test is reversible only if there is an abuse of discretion.

📄 Civil Procedure > Relief From Judgment > Motions for New Trial
📄 Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

**HN2** When a motion for a new trial is made because a party discussed excluded evidence in the presence of the jury, the appellate court does not reverse a district court's refusal to grant that motion unless the district court's actions amounted to a prejudicial abuse of discretion. Reviewing courts must look at the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

📄 Civil Procedure > Jury Trials > Jury Instructions

**HN3** The appellate court presumes that the jury will follow a curative instruction.

📄 Civil Procedure > Jury Trials > Jury Instructions

**HN4** A plaintiff is not entitled to have a theory presented to the jury unless there is sufficient evidence to support it. The evidence necessary to support an instruction must be more than conjecture and speculation.

📄 Civil Procedure > Relief From Judgment > Newly Discovered Evidence
📄 Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

**HN5** The requirements for granting a new trial in a civil case based on newly discovered evidence are: (1) The evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended. The appellate court reviews the district court's decision for an abuse of discretion.

**COUNSEL:** ARGUED: Oldric Joseph LaBell, Jr., Newport News, Virginia, for Appellant.

William R. Rakes, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellees.

ON BRIEF: Melissa W. Scoggins, Gregory J. Hale, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia; Wilburn C. Dibling, Jr., William X. Parsons, OFFICE OF THE CITY ATTORNEY, Roanoke, Virginia, for Appellees.

**JUDGES:** Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and WILLIAMS, Circuit Judges.

**OPINION:**

**OPINION**

PER CURIAM:

Carl E. Simmons appeals an adverse jury verdict in this § 1983 action alleging excessive force during his arrest by Officer R.J. Scott and a failure to train on the part of the City of Roanoke, Virginia (the City). Simmons challenges four of the district court's rulings below. First, [*2] Simmons contests the district court's determination that prior complaints against Officer Scott for excessive force could not be introduced into evidence under Federal Rule of Evidence 404(b). Second, he argues that the district court should have granted a new trial based on defense counsel's improper references to Simmons's prior convictions. Next, Simmons contends that the district court erred in refusing to give the jury an instruction on gross negligence. Finally, he argues that the district court should have granted his post-trial motion for a new trial based on newly discovered evidence. For the reasons explained below, we affirm the district court on all grounds.

I.

Often, opposing parties in a legal dispute present similar versions of the facts with only slight differences in legally significant areas. In this case, however, Simmons's and Scott's stories are vastly different. According to Officer Scott, on February 3, 1992, he was on patrol when he noticed a car driving without its lights on. The driver of this car was later identified as Simmons. Scott turned on his flashing lights, signaling for Simmons to stop his car and pull over. Simmons complied -- until Scott exited **[*3]** his car and began to approach Simmons, at which point Simmons accelerated. Scott returned to his car and pursued Simmons in a high speed chase. Once again, Simmons brought his car to a stop. Scott exited his car to approach Simmons's vehicle and, again, Simmons drove away.

Finally, Simmons ended the chase. When Scott approached the car, he noticed Simmons rolling up the window. As a distraction technique, Scott rapped the window with his hand, and then flung the car door open. Immediately, Simmons turned to the passenger side of the car, reaching for something on the floor. According to his trial testimony, Scott believed that Simmons was reaching for a weapon, so he drew his pistol. Simmons grabbed at Scott's pistol and a struggle ensued. As a result of the struggle, which Scott testified lasted only a few moments, the pistol discharged. Simmons's injuries were severe. * A bullet traveled through Simmons's face, causing blindness in his left eye, partial loss of hearing, and a partial loss of ability to open his jaw.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

\* The parties agree on the nature and extent of Simmons's injuries.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - **[*4]**

Simmons tells a completely different story about how his injuries occurred. He admits that he took a couple of blocks to come to a stop after Scott signaled to him. When he stopped, however, Simmons claims that Officer Scott emerged from his squad car with his pistol drawn. Because he was frightened, Simmons claims that he rolled his window up all the way. Simmons testified that Scott approached the car, tapped his pistol against Simmons's window, and ordered Simmons to roll his window down. Simmons testified that he obeyed, rolling his window down 4-5 inches. According to Simmons, Scott then began to tap the barrel of his pistol on top of the rolled down window glass when, suddenly, the pistol discharged into Simmons's head.

As a result of this incident, on November 12, 1992, Simmons filed this action, pursuant to 42 U.S.C. § 1983, against Scott and his employer, the City of Roanoke. During discovery, Simmons unearthed several prior complaints against Scott for use of excessive force. Based on this information, Simmons filed a second amended complaint on August 16, 1993. The district court denied the City's motion for summary judgment on September 13, 1993. In doing so, the court **[*5]** noted that the complaints against Scott helped to create a genuine issue of material fact as to the City's liability. At a hearing two days later, however, the district court determined that the prior incidents of excessive force were not admissible against Scott personally. Therefore, the court bifurcated the trial. The first stage would try the excessive force claims against Officer Scott individually, and if he were found guilty, the second stage would try the failure to train claims against the City (in which the evidence of prior complaints against Scott would be admissible). Finally, at the pre-trial hearing, the court refused to allow Scott to introduce Simmons's prior drug convictions and a conviction for taking indecent liberties with a minor. The court did agree, however, to admit the indecent liberties conviction for impeachment purposes so long as defense counsel only referred to the conviction as a "felony." (J.A. 90.)

Trial was held on September 20-23, 1993. During crossexamination of Simmons, Scott's counsel referred to both the indecent liberties conviction and the drug conviction. Simmons immediately moved for a mistrial. The district court denied the motion. After **[*6]** both parties had rested, the district court denied Simmons's request for a jury instruction on a pendent state law claim of gross negligence. After the court submitted the § 1983 and state law intentional tort claims, the jury returned a verdict for Scott on both counts. After trial, Simmons moved for a new trial, claiming that he had encountered another witness shortly before the case went to the jury who claimed that she had heard Scott say he liked to harm

arrestees who gave him a hard time during arrest. The district court denied this motion. Simmons appealed in a timely fashion.

II.

Simmons argues that the district court should have admitted previous complaints for excessive force against Officer Scott into evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Simmons asserts that because Scott claimed that the gun accidently fired in the midst of a struggle, these incidents would serve to rebut Scott's story by showing a "lack of accident" and "intent," as permitted under Rule 404(b). Although we normally give district courts a wide berth when allowing Rule 404(b) testimony into evidence, see Kopf v. Skyrm, 993 F.2d 374, 380-81 (4th Cir. 1993), we have always [*7] encouraged close scrutiny of whether similar act testimony should be admitted. In Morgan v. Foretich, 846 F.2d 941 (4th Cir. 1988), we stated that **HN1** "the threshold requirements for admitting evidence under Rule 404(b)" are "(a) whether the proffered evidence is relevant to an issue other than the defendant's character, and (b) whether the probative value is substantially outweighed by its prejudicial effect." Id. at 944 (emphasis in original). A district court's decision not to admit evidence under this test is reversible only if there is an abuse of discretion. Id. at 945.

Although the facts render this a close call under Rule 404(b), we find no abuse of discretion. The district court properly examined the proffered evidence and determined that it could not be introduced against Scott in his personal capacity for two reasons. First, the court found that not all of the proffered acts were similar enough to be probative of Scott's intent. For instance, Simmons tried to admit an incident in which Scott was suspended for arresting someone as a "practical joke." Although Scott violated the department's internal rules in this incident, Scott's intent in playing a practical [*8] joke is not the same as his intent cause harm in an excessive force claim. Unless the acts are similar to the one at issue, they show only bad character -- which goes to the heart of what Rule 404 prohibits. Second, every "similar act" took place at least five years before the incident in question. The district court concluded that this remoteness in time severely impacted on the probativeness and reliability of the evidence. See Patterson v. McLean Credit Union, 805 F.2d 1143, 1147 (4th Cir. 1986) (noting that the remoteness in time of similar acts evidence weighed against its probative nature). We note that the district court did allow evidence of Scott's most recent similar act concerning a 1987 incident in which Scott needlessly choked a restrained arrestee. Under these facts, the district court had sound reasons for refusing to admit the evidence of earlier complaints against Scott. We cannot say that it abused its discretion, and, therefore, we affirm.

III.

In a separate evidentiary ruling, the district court refused to admit into evidence Simmons's previous drug convictions or his conviction for taking indecent liberties with a minor. Counsel for Scott, however, managed [*9] to mention both of these convictions in front of the jury, and, in response, Simmons moved for a mistrial and a new trial. The district court denied these motions.

Simmons argues that both the admission of the indecent liberties conviction during his cross-examination and the references to his drug convictions during Scott's closing argument prejudiced him enough to require a new trial. **HN2** When a motion for a new trial is made because a party discussed excluded evidence in the presence of the jury, we do not reverse a district court's refusal to grant that motion unless the district court's actions amounted to a "prejudicial abuse of discretion." See Arnold v. Eastern Air Lines, 681 F.2d 186, 197 (4th Cir. 1982), cert. denied sub nom., Aetna Casualty & Surety Co. v. United States, 460 U.S. 1102, 76 L. Ed. 2d 366, 103 S. Ct. 1801 (1983). Reviewing courts must look at "the 'totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.'" Id. (quoting City of Cleveland v. [*10] Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980)). With these factors in mind, we look at each of defense counsel's misstatements to determine whether the district court should have granted a new trial.

A.

Simmons first argues that attempted use of his indecent liberties conviction during his cross-examination merited a new trial. Although the district court had ruled that defense counsel could attempt to impeach

Simmons by asking about his conviction for taking indecent liberties with a minor, the court refused to allow defense counsel to mention the conviction by name. Instead, the court ruled that counsel could only refer to it as a "felony." During cross examination, however, defense counsel asked Simmons whether he "had a conviction of indecent liberties." (J.A. 172). Before he could answer, Simmons's counsel objected and the jury was excused. The court appropriately sustained Simmons's objection, and as soon as the jury returned, the court gave a lengthy curative instruction. Nevertheless, Simmons asked for a new trial.

We do not believe that the district court erred in denying Simmons's motion. Applying the Arnold factors, and especially looking to the nature [*11] of the comments, their frequency, and the way the parties and the court treated them, we find that defense counsel's question to Simmons did not unduly prejudice the jury. First, the encounter lasted only a few seconds, and the offense was never repeated in front of the jury. Second, Simmons did not answer the question, so the jury never discovered whether he actually was convicted of the charge. Third, the district court quickly instructed the jury to disregard the question not because it was prejudicial, but rather because it was "inaccurate." (J.A. 175.) Because HN3 we presume that the jury will follow a curative instruction, Greer v. Miller, 483 U.S. 756, 766 n.8, 97 L. Ed. 2d 618, 107 S. Ct. 3102 (1987), the court alleviated any prejudice that could have resulted from this very short encounter. Viewing the question in light of the totality of the circumstances, we cannot say that Simmons suffered prejudice requiring a new trial.

B.

Next, Simmons argues that defense counsel's mention of his prior drug convictions also merits a new trial. During closing arguments, defense counsel made the following statements:

> There was some reason why [plaintiff] did not want to comply with the blue lights and to talk [*12] to this police officer. It could have been a number of things: cocaine, not wanting to go back to prison, possession of cocaine. We know that's in this case. It was found in the car. The medical record introduced from Roanoke Memorial Hospital, positive for cocaine, positive for Valium. Did that in any way explain the behavior of Mr. Simmons that evening?

(J.A. 384). Based on these comments, Simmons moved for a new trial because these statements impermissibly alluded to his prior drug convictions. Again, we look to Arnold, and determine that the totality of the circumstances weighs against Simmons. Everything Scott's counsel stated had already been admitted into evidence without an objection from Simmons. On cross-examination, Simmons admitted that he had served time in prison. Both the police and hospital reports submitted into evidence show that he had cocaine not only in his car, but also in his body. Because defense counsel only reiterated previously admitted testimony, we cannot say that these comments severely prejudiced Simmons. Furthermore, the overwhelming evidence against Simmons buttresses our conclusion that any prejudice he may have suffered from these [*13] statements does not require a new trial. Therefore, we find that the district court did not abuse its discretion in denying Simmons's motion for a new trial on these grounds.

IV.

The district court refused to instruct the jury on Simmons's state law theory of gross negligence. The district court gave two reasons for refusing to give the instruction: (1) that Simmons did not properly plead gross negligence in his amended complaint; and, (2) that Simmons failed to present enough evidence of gross negligence to support an instruction. HN4 A plaintiff is not entitled to have a theory presented to the jury unless there is sufficient evidence to support it. Brownlow v. Aman, 740 F.2d 1476, 1490 (10th Cir. 1984)."The evidence necessary to support an instruction must be more than conjecture and speculation." Id. We conclude that, even if gross negligence were properly pled, the district court correctly refused to give the instruction to the jury because there was no evidence to support it.

Simmons did not warrant a gross negligence instruction because all of his evidence on that issue cuts against him. Simmons's theory argues that Scott was grossly negligent in tapping the gun on the [*14] top of the window because such behavior could result in discharge of the gun. Although as pled these facts may constitute gross negligence in Virginia, see Frazier v. City of Norfolk, 234 Va. 388, 362 S.E.2d 688, 691 (Va. 1987), the record reflects no evidence that Scott's weapon could have accidently discharged. Simmons's own expert witness on firearms, Cecil A. Moorehead, testified that Scott's weapon could not

discharge from tapping it on top of the window. He stated that "if you tap the firearm on any object, that object is not going to cause that firearm to go off." (J.A. 232.) Moorehead testified at length as to the gun's "hammer block" mechanism which prevents the gun from discharging unless the trigger is actually pulled with approximately four pounds of force. This was Simmons's own expert and he presented nothing else to establish that the gun could have discharged accidently. Because the gun could not fire under the facts of Simmons's gross negligence scenario unless Scott intentionally pulled the trigger, the district court properly refused to instruct the jury on a gross negligence theory.

V.

After trial, Simmons moved for a new trial based upon the affidavit of Teresa McGee, [*15] a former social acquaintance of Scott. She stated that prior to the incident in question she had heard Scott make the following remarks: (1) "that if a driver went '10-80' on him (failed to stop when signaled) [that person] would go to the hospital before they went to jail"; (2) "that on quiet nights he on occasion stopped cars and intentionally provoked fights with male occupants so he could beat them up"; and (3) "when stopping cars at night he would have a gun drawn and cocked as he approached the car." (J.A. 76). Simmons argues that because his counsel did not have a chance to talk with Ms. McGee until almost the last day of the trial, this newly discovered information mandates a new trial. The district court rejected this argument and we affirm.

In Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989), we stated HN5⊕the requirements for granting a new trial in a civil case based on newly discovered evidence:

> (1) The evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence [*16] is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

We review the district court's decision for an abuse of discretion. Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984).

We do not believe that Simmons has satisfied the Boryan requirements. First, the evidence was available to Simmons during the trial. Although McGee first contacted Simmons late in the process, we believe that Simmons was able to ascertain the nature of McGee's information so that he could have made a considered decision whether or not to introduce her testimony. Second, even if this evidence were truly "newly discovered," it certainly was not "likely to produce a new outcome." McGee's testimony, assuming it was admissible under 404(b), is not dispositive--Scott introduced numerous witnesses and forensic evidence supporting his story. Also McGee's testimony is not impervious to attack. Scott submitted to the district court three affidavits questioning McGee's veracity and reliability. We cannot conclude that her testimony would have altered the jury's verdict. Therefore, we find that the district court did not [*17] abuse its discretion in denying Simmons's motion for a new trial based on newly discovered evidence.

VI.

For the foregoing reasons, we affirm the rulings of the district court.

AFFIRMED

Service: Get by LEXSEE®
Citation: 1995 U.S. App. Lexis 5566
View: Full
Date/Time: Wednesday, February 5, 2003 - 8:35 PM EST

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.