IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SCOT WALLACE DAWSON and )
VICTORIA DAWSON, )
 )
      Plaintiffs, )
 )
  v. )  1:01CV00269
 )
SAM PAGE (In his official )
capacity as Sheriff of )
Rockingham County), )
ROGER HAMPTON HAIR in his )
capacity as a Major )
with the Rockingham County )
Sheriff's Department), )
J.V. THOMAS (In his capacity as )
a Captain with the Rockingham )
County Sheriff's Department), )
RANDOLPH EDWARD HOWELL )
(In his capacity as )
a Deputy with the Rockingham )
Sheriff's Department), )
 )
      Defendants. )

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

    Plaintiffs Scot Wallace Dawson and Victoria Dawson brought this action against Sheriff Sam Page, Roger Hair, J.V. Thomas, and Randolph Howell of the Rockingham County Sheriff's Department, among others, arising from their alleged use of excessive force. Many of Plaintiffs' claims did not survive judgment as a matter of law. A jury found Defendants not liable on the remaining claims. Plaintiffs now move for a new trial

on the remaining claims.  Plaintiffs now move for a new trial pursuant to Federal Rule of Civil Procedure 59(a).  For the reasons set forth below, the motion will be denied.

I. FACTUAL BACKGROUND

Scot Dawson, feeling depressed and ailing from the flu, took 8-10 Valium pills on March 21, 2000, and went to sleep. Concerned that he would miss another day of work, his wife, Gladys Dawson, tried to awaken him.  He told her to leave him alone and let him die.  Fearing for her husband's safety, Gladys called Scot's father, who advised her to call 911 and report a drug overdose.  Before the ambulance arrived, Scot rose, dressed, and drove away in his pickup truck.  After Gladys again called 911, the operator informed local authorities to be on the lookout for a man in a blue Toyota pickup truck who had taken a drug overdose.  Because the Dawsons live in Rockingham County, North Carolina, near the Virginia border, the dispatcher's message went to Virginia authorities as well as the Rockingham County Sheriff's Department.

Virginia law enforcement officers spotted the truck and started to follow it.  When he saw the blue lights, Mr. Dawson fled toward the state line at speeds approaching 95 miles per hour.  Mr. Dawson testified that he does not remember driving his truck.  The chase ended when the truck stopped in Mr. Dawson's

2

gravel driveway; Randy Howell, Roger Hair, Jimmy Thomas, and Alan Farrar of the Rockingham County Sheriff's Department were close behind. The driver remained motionless with his hands on the steering wheel as Howell approached the truck with his police dog, Toon, on a leash. When Mr. Dawson did not respond to commands to exit the truck, Howell opened the door, grabbed him by the arm, pulled him onto the ground, and yelled, "I got him." Mr. Dawson did not resist.

Scot Dawson remembers being motionless on the ground next to his truck, feeling a knee in his back, a heavy object on his shoulder and neck, a sharp pain in his left side, and a feeling that he was being kicked. He was handcuffed and lying on his stomach. His mother, Victoria Dawson, testified that she emerged from her son's house to see him in handcuffs and lying face down, an officer's foot on his neck, and two officers kicking him so hard that the blows lifted his body from the ground. After an incident inside the house moments later, Hair arrested Victoria Dawson in a manner that, she claims, involved excessive force.

II. DISCUSSION

Plaintiffs seek a new trial for Scot Dawson on grounds that the court: (1) gave improper jury instructions, (2) questioned

3

Plaintiff Victoria Dawson in a prejudicial manner, and (3) made incorrect evidentiary rulings.[1]

A new trial should be ordered when the verdict is against the clear weight of the evidence, is based on false evidence, or will result in a miscarriage of justice. <u>Atlas Food Sys. and Serv., Inc. v. Crane Nat'l Vendors, Inc.</u>, 99 F.3d 587, 594 (4th Cir. 1996). The trial court has broad discretion in considering motions for new trial, <u>Nichols v. Ashland Hosp. Corp.</u>, 251 F.3d 496, 500 (4th Cir. 2001), and it may weigh evidence and consider the credibility of witnesses in making a determination. <u>Conner v. Schrader-Bridgeport Int'l, Inc.</u>, 227 F.3d 179, 200 (4th Cir. 2000).

Plaintiffs do not argue that the jury verdict was based on false evidence or contradicted the clear weight of the evidence. A new trial should be granted, therefore, if the errors alleged by Plaintiffs resulted in a miscarriage of justice. <u>Atlas Food Sys.</u>, 99 F.3d at 594. Because the errors Plaintiffs allege do not satisfy this standard, the motion for a new trial will be denied.

---

[1] Plaintiffs' motion includes a request for a new trial for Victoria Dawson, but Plaintiffs make no argument on that issue. With no guidance from the moving party, the court will deny the motion as to Victoria Dawson.

4

A.   Jury Instructions

Plaintiffs first argue that a new trial is warranted because the jury received erroneous and contradictory instructions regarding the use of force against Scot Dawson.[2]

The instructions concerning Mr. Dawson's excessive force claims incorporated a stipulation that Plaintiffs reduced to writing.  When the stipulation was submitted, Mr. Dawson had testified that he remembered being pulled out of the truck onto the ground; that when he was on the ground, he was lying on his stomach and his wrists were handcuffed behind his back; that while on the ground, he felt a knee in his back, a heavy object on his shoulder and neck, a pain in his side, and the sensation of being kicked; and that he did not see a dog and did not know if a dog bit him.  Victoria Dawson had testified that she saw Hair stomp on Mr. Dawson, and Thomas and Howell kick him, while he was lying on his stomach with his wrists in handcuffs.  She did not see a dog.  Plaintiffs' counsel had read into the record

---

[2] Plaintiffs also sought, and the court rejected, an instruction providing that Scot Dawson's degenerative disc disease rendered him more likely to suffer ruptured discs due to being stomped, bitten, or kicked.  This peculiar susceptibility instruction concerned damages, an issue the jury did not reach. In addition, Scot Dawson testified that he had been kicked 20 to 30 times, and Victoria Dawson testified that she saw her son's prostrate body lifted from the ground by the force of the blows. These allegations, if true, would have resulted in severe injuries which reasonably could have included two ruptured discs. Therefore, no new trial is warranted on this ground.

5

a portion of Howell's deposition, in which he stated that the dog lunged at Mr. Dawson but did not bite him.

Based on this evidence, the parties stipulated that if any of the Defendants stomped on, kicked, or permitted a dog to bite Mr. Dawson, they had used excessive force in arresting him. If no stomping, kicking, or biting occurred, however, no excessive force had been used. The parties subsequently amended this stipulation to reflect the evidence, inserting the phrases "on the ground" and "in custody" in instructions concerning Howell, Thomas, and Hair, and the term "stomped" in the claim against Hair. The resulting excessive force instructions relevant to Scot Dawson, including the amended stipulation, provided:

> First, Plaintiff Scot Dawson contends, and the Defendant Randolph Howell denies, that he allowed his police canine, Toon, to bite Mr. Dawson during his arrest on the evening of March 21st, 2000. If you determine by the greater weight of the evidence that Mr. Dawson was bitten by the police canine Toon while he was on the ground and in custody, then you must find that the Defendant Howell used excessive force . . . .
>
> Second, the Plaintiff Scot Dawson contends, and the Defendant J.V. Thomas and the Defendant Randolph Howell denied, that they kicked Mr. Dawson during his arrest on the evening of March 21st, 2000, while in custody on the ground. If you determine by the greater weight of the evidence that Mr. Dawson was kicked by the Defendant Howell and/or by the Defendant Thomas, while on the ground, then you must find that the Defendant Howell and/or Defendant Thomas used excessive force . . . .

>     Third, the Plaintiff Scot Dawson contends, and the
> Defendant Roger Hair denies, that he stomped with his
> foot on the neck and shoulder of Mr. Dawson while he
> was on the ground during his arrest on March 21st. If
> you determine by the greater weight of the evidence
> that Mr. Hair stomped on Mr. Dawson's neck and back or
> shoulder, while Mr. Dawson was handcuffed and in
> custody, then you must find that the Defendant Hair
> used excessive force . . . .
>
>     Fourth, the Plaintiff Scot Dawson contends, and
> the Defendants deny, that the Defendant Randolph Howell
> and J.V. Thomas applied a knee to the back of Mr.
> Dawson during his arrest on that same evening. If you
> determine by the greater weight of the evidence that
> Mr. Dawson had a knee placed in his back by Defendant
> Howell, then you must find that the Defendant Howell
> used excessive force . . . . If you determine by the
> greater weight of the evidence that Mr. Dawson had a
> knee applied to his back by the Defendant Thomas, then
> you must find that the Defendant Thomas used excessive
> force . . . .

(Partial Tr., Vol. I, Feb. 26, 2003 at 5-6.)[3]

After receiving these instructions, the jury deliberated for over an hour. Concerning the excessive force claim against Howell, the jury submitted the following question:

> In reference to question number three on the verdict
> form,[4] it asks if Plaintiff Scot Dawson's
> Constitutional rights were violated by using excessive
> force during the arrest. The Court's directive
> suggests that the complaints of the Plaintiff are that

---

[3] Transcript citations refer to a certified partial transcript.

[4] Part 3 of the verdict form reads: "Did the Defendant Randolph Howell violate Plaintiff Scot Dawson's constitutional rights by using excessive force against Mr. Dawson while he was on the ground and in custody?" This language matches the instruction for Howell.

7

> his rights were violated while he was on the ground and
> in custody. Does "in custody" mean he was already
> cuffed, and should question number three on the verdict
> form state "after Plaintiff was in custody?"

(Partial Tr., Vol. I, Feb. 26, 2003 at 8.) Before answering the jury's question, the court discussed the matter with the parties. When asked to define the term "in custody," Plaintiffs' counsel responded, "It means in the control of the officer," a condition not limited to being in handcuffs. (Partial Tr., Vol. I, Feb. 26, 2003 at 16.) Defendants argued that under the terms of the stipulation, Plaintiffs' evidence supported no distinction between the terms custody and handcuffed.

The court proposed to instruct the jury that "[hand]cuffed" and "in custody" are not necessarily synonymous. "Custody" means you have control of, and "cuffed" is one means of controlling." (Id. at 22.) Plaintiffs agreed that "'cuffed' is sort of a subset of being under custody." Id. at 23. The jurors returned, and the court instructed them that "'[i]n custody' means under the control of. Cuffed is one means of control. It is not synonymous with the word 'control,' but it is one portion of the word 'control.'" Id. at 27. After the jury resumed its deliberations, and despite an acknowledgment that the parties had consented to the court's answer, Plaintiffs' counsel suddenly volunteered that "'custody'" means not free to leave, rather than

8

"control." Id. Counsel subsequently objected to the court's supplementary instruction on the basis of counsel's afterthought.

A trial judge has broad discretion in framing jury instructions, which should relate the law to the evidence presented by the parties. Teague v. Bakker, 35 F.3d 978, 985 (4th Cir. 1994); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2556 (1995). If the instructions correctly state the law and adequately cover the issues in the case, they are proper. Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1164 (4th Cir. 1986). Jury instructions are sufficient if "construed as a whole, and in light of the whole record," they "adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987).

Plaintiffs raise two principal challenges to the court's jury instructions. First, Plaintiffs argue that the court's use of the terms "on the ground," "in custody," and "handcuffed" with respect to Mr. Dawson's treatment by different defendants made the instructions erroneous, confusing, and contradictory.[5]

---

[5] Plaintiffs also contend that the insertion of the phrase "on the ground and in custody" in the trial judge's handwriting "highlighted that portion [of the instructions] for the jury." (Pls.' Br. Supp. Mot. New Trial at 7.) Plaintiffs cite no authority, and the court is unaware of any, for the proposition

9

Specifically, Plaintiffs claim that the court's reference to handcuffing in its instruction regarding Hair's conduct toward Mr. Dawson was legally erroneous and confused the jury.

The court disagrees. All of Plaintiffs' evidence indicated that any stomping by Hair occurred after Mr. Dawson was in handcuffs. Mr. Dawson remembered a heavy object on his neck and shoulders while he was handcuffed, and Victoria Dawson testified that she saw Hair stomp on her son after he had been handcuffed. Thomas testified that he could not remember whether, when he arrived at the scene, Hair was present. Plaintiffs offered no evidence that Mr. Dawson was stomped on by Hair or anyone else before he was handcuffed. "A charge should not be given on a matter, whether or not raised in the pleadings, if it is not supported by the evidence." 9A Wright & Miller § 2556 at 448. Because this instruction fit the evidence, it was proper.

In addition, the court took steps to avert the confusion Plaintiffs allege. After Plaintiffs objected to the mentioning of handcuffs, the court orally charged the jury to "remember that the activities that are complained about, and defended against in

---

that handwritten changes to typewritten instructions constitute grounds for a new trial. In addition, Plaintiffs' counsel in open court described the phrase "while in custody on the ground" as "proper" language for an instruction. (Partial Tr. Feb. 26, 2003 at 4.) Accordingly, the court declines to grant a new trial on this ground.

10

this case, are activities which took place while Scot Dawson was on the ground and in custody. I wanted to call that to your attention." (Partial Tr., Vol. I, Feb. 26, 2003 at 7.) This is language included in the stipulation and previously deemed "proper" by Plaintiffs' counsel. (Id. at 4.) The court directly addressed the jury's question concerning the distinction between custody and handcuffing: handcuffing "is not synonymous with the word 'control,' but it is one portion of the word 'control.'" (Id. at 27.) Again, Plaintiffs' counsel had agreed to the substance of this instruction.

In light of the whole record, the court's instructions accurately stated the law regarding excessive force and adequately informed the jury of the legal principles necessary to support a verdict based on the evidence. Spell, 824 F.2d at 1395. In this context, the court's reference to handcuffs was not erroneous, confusing, or contradictory. Accordingly, a new trial is not appropriate.

Second, Plaintiffs contend that the court's instructions, verdict sheet, and supplementary instructions "gave the impression that Mr. Dawson had to be physically restrained," by handcuffs or otherwise, "before the jury could consider whether the alleged uses of force were excessive." (Pls.' Br. Supp. Mot. New Trial at 11.) Specifically, Plaintiffs suggest that the

11

court's response to the jury's question was confusing and legally improper, justifying a new trial. The instructions and verdict sheet used the phrases "on the ground" and "in custody," language Plaintiffs approved. (Partial Tr., Vol. I, Feb. 26, 2003 at 4.) The court's supplementary instruction, issued in response to the jury's inquiry, was that "'[i]n custody' means under the control of. Cuffed is one means of control. It is not synonymous with the word 'control,' but it is one portion of the word 'control.'" (Id. at 27.)

The court initially observes that Plaintiffs agreed to the supplementary instruction, then objected after the jury resumed deliberations. Under Federal Rule of Civil Procedure 51, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto <u>before the jury retires to consider its verdict</u>." Fed. R. Civ. P. 51 (emphasis added). To receive a new trial on this ground, Plaintiffs must show that the court's supplementary instruction, made after their approval, demonstrated plain error affecting their substantive rights that seriously affects the fairness and integrity of judicial proceedings. <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 239-40 (4th Cir. 1999).

In light of the evidence, to which the jury instructions properly conformed, the court's instruction about the meaning of

12

custody does not constitute plain error affecting Scot Dawson's substantive rights. The jury asked whether Mr. Dawson's being in custody necessarily meant that he was in handcuffs. The court's response, that being handcuffed is one way of being in the control of law enforcement, is accurate based on the facts of this case. The legal definition of custody, of course, is that a person is not free to leave, even if he is not physically restrained. United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). Considering the evidence in this case, however, the distinction between "not free to leave" and "control" lacks a difference. All of the evidence indicates that Scot Dawson was in the control of Defendants from the moment he was pulled from the truck. No evidence suggested that Defendants injured him before he exited the truck in their control.

Technical flaws in jury instructions are excused so long as they do not result in a miscarriage of justice. Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987); see also Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1296 (4th Cir. 1995) ("Even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the plaintiff's case."). In view of this standard and in light of the entire record, see Abraham v. County of Greenville, 237 F.3d 386, 393 (4th Cir. 2001), the court concludes that its instructions concerning excessive force did

13

not mislead or confuse the jury, did not seriously prejudice Plaintiffs' case, and did not result in a miscarriage of justice. Therefore, a new trial is not appropriate on this ground.

B. Questioning of Plaintiff Victoria Dawson

Plaintiffs also seek a new trial because the court "expressed its displeasure" with Plaintiff Victoria Dawson during her testimony "in a way that was readily apparent to the jury." (Pls.' Br. Supp. Mot. New Trial at 19.) Because Mrs. Dawson was the sole eyewitness to Defendants' treatment of her son, Plaintiffs claim that the court's conduct prejudiced Mr. Dawson's case.

As Plaintiffs recognize, the court may question a witness directly. Fed. R. Evid. 614. The record indicates that the court's interaction with Mrs. Dawson properly ensured that she answered the questions posed to her, and only those questions. In addition, the jury was specifically instructed not to make any assumptions based on the court's questioning or admonishing of any witness, including Mrs. Dawson.[6] Plaintiffs cite no authority

---

[6] The court instructed the jury that

> during the course of the trial I have occasionally made comments to the lawyers, or I have asked questions of witnesses, or perhaps at some times admonished a witness about the manner in which he or she may have responded to questions that were posed. Do not assume, from anything that I may have

to support the grant of a new trial under such circumstances. Accordingly, Plaintiffs' motion will be denied as to this ground.

C. Evidentiary Rulings

Plaintiffs argue that several of the court's evidentiary decisions resulted in prejudice so severe that a new trial is appropriate. Errors made in such rulings warrant a new trial if they constitute an abuse of discretion. Sasaki v. Class, 92 F.3d 232, 241 (4th Cir. 1996). The issues Plaintiffs revisit were raised and evaluated at trial, and the present briefs illuminate these questions no better than the extensive motions in limine and subsequent oral arguments that informed the court's decisions. For the reasons stated in the record, the court concludes that its evidentiary rulings do not constitute an abuse of discretion entitling Plaintiffs to a new trial.

---

> said, that I have any opinion concerning the issues which are for you. Except for my instructions to you on the law, you should disregard anything that I may have said during the trial in arriving at your own findings as to the facts.

(Partial Tr., Vol. II, Feb. 26, 2003 at 3.)

15

For the reasons set forth herein,

IT IS ORDERED that Plaintiffs' Motion for New Trial [150] is denied.

This the 29 day of September 2003.

_____
United States District Judge